People of the State of Illinois, for use of Minnie Hill, Appellee, v. Ignatz G. Schwartz et al. The Title Guaranty & Trust Company, Appellant.

### Gen. No. 14,561.

1. MEASURE OF DAMAGES—*in action upon constable's bond.* In an action upon a constable's bond, the measure of damage is compensation. The plaintiff can recover neither exemplary nor punitive, nor remote, conjectural or speculative damages.

2. DAMAGES—*compensatory, defined.* In law, compensatory damages are damages estimated as an equivalent for the injury in contradistinction from punitive, exemplary or vindictive damages which are awarded by way of punishment and as a deterrent to others.

3. DAMAGES—*exact computation not essential.* The common law does not permit acts of one person toward another, recognized by it as wrongs and injuries committed, to go uncompensated because of the incapability of exact measurement thereof in money. In such instances, it is most peculiarly the function of the jury to estimate the compensation.

4. BONDS—*who may sue upon constable's.* A person not a suitor who has been injured by the misconduct of a constable while acting under cover of his office, may under the statute sue upon the bond of such official.

Action in debt. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed July 9, 1909. Rehearing denied October 5, 1909.

Statement by the Court.    This suit is an action in debt, upon a constable's bond, brought by appellee, as plaintiff, against Ignatz G. Schwartz, a constable, and the appellant company, his surety, as defendants. Schwartz was not served and did not appear. The trial court rendered judgment against the company for $750, and to reverse that judgment the company is prosecuting this appeal.

The bond is, among other things, conditioned that if Schwartz "shall faithfully discharge the duties of his office as constable  *  *  then this obligation to be void, otherwise to remain in full force and virtue."

The Justices' and Constables' Act, Rev. Stats., chap. 79, sec. 9, provides that these constables' bonds are for the "benefit of all suitors and others who may be injured or aggrieved by the official acts or misconduct" of constables.

On November 8, 1905, as was shown by the docket of Robert M. Campbell, a justice of the peace, a judgment was rendered against Charles Hill for $20. It also appears, from the same docket, that an immediate ex-

ecution was issued, upon the oath of the plaintiff or his agent.

Shortly before 12 o'clock noon, on Friday, November 10, 1905, Schwartz, with two assistants, came to the home of Mr. and Mrs. Hill, with an execution upon this judgment. Schwartz gave Mrs. Hill a copy of the execution. Indorsed upon that copy appears the following: ''By virtue of the within I have served a copy of this writ with notice to schedule within ten days indorsed thereon, by delivering the same to within-named defendant this — day of ———, 190—.

I. G. Schwartz,<br>Constable.''

The following indorsement also appears thereupon: ''Nov. 10—05. Received payment from Minnie Hill.

I. G. Schwartz,<br>Constable.''

Mrs. Hill testified that the constable had been at her home before the occasion herein complained of. She was alone at home when he came to collect the judgment, and told him that the home and all the furniture in it belonged to her. She refused to let him in and also informed him that the claim had been paid and that her husband, Mr. Hill, had receipts showing the payment. At the trial she testified that the home and the furniture were hers before she married Mr. Hill. Notwithstanding all she said to Schwartz, he threatened to enter by breaking down her door, if it was not opened for him. All the entrances to the house were bolted and while Schwartz was at her front door, endeavoring to induce Mrs. Hill to let him in, his two assistants in some way pried open one of the windows in the rear and, having by means of that window entered the house, opened a rear door. Schwartz then went around to that rear door and he also came into the house. They informed Mrs. Hill they would put out the fire in the stove and take the stove. Although Mrs. Hill asked them to wait until she could telephone her husband, they started to take

various articles and told her that unless she paid the money they would levy. They remained about an hour or an hour and a half and, during that time, Mrs. Hill's children, Mr. Hill and some policemen, who had been telephoned for, came. In order to get rid of Schwartz and his assistants, Mrs. Hill went to a neighbor and borrowed $25.90, the amount they insisted upon, and paid it to Schwartz. Plaintiff's attorney admitted that this money has since been refunded.

LOUIS GREENBERG, for appellant.

BLUM & BLUM, for appellee.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

Appellant contends: That the measure of damages is the actual damages sustained and that no punitive damages are permitted in this action; that it is incumbent upon plaintiff to show the constable had a valid execution and to show that the person who came to Mrs. Hill's home and committed the acts complained of was the same person as Schwartz, one of the obligors in the bond.

These contentions may all be conceded, and, upon the evidence in this record, we are nevertheless obliged to affirm the judgment.

In such case as this the measure of damage is compensation. Plaintiff can recover neither exemplary nor punitive nor remote, conjectural or speculative damages. She is limited in measure to compensation and in kind to actual damages. Compensatory damages are those allowed as a recompense for the injury actually received. Bouvier's Law Dic. Title "Damages." In law, compensatory damages are damages estimated as an equivalent for the injury in contradistinction from punitive, exemplary or vindictive damages which are awarded by way of punishment and as a deterrent to others.

In order to entitle a party to have damages estimated as an equivalent for the injury sustained, the loss to be compensated need not always be distinct and definite, capable of exact description or of exact measurement in dollars and cents. Damages are, in proper cases, allowable for injured feelings, bodily pain, grief of mind, injury to reputation and for other sufferings which it would be impossible to make subjects of exact proof and computation in respect to the amount of the loss sustained. Yet these are not punitive damages. The common law does not permit acts of one person toward another, recognized by it as wrongs and injuries committed, to go uncompensated because of the incapability of exact measurement thereof in money. In such instances, it is most peculiarly the function of the jury to estimate the compensation. In Fidler v. McKinley, 21 Ill. 308, an action of *assumpsit* for the breach of a contract of marriage, the court said (pp. 315-16): "In cases of this character it is almost impossible to lay down any rule, by which the measure of damages can be fixed with any degree of precision. There is no scale by which such damages can be graduated with certainty. They admit no other test than the intelligence of the jury, governed by a sense of justice. Such injuries are accompanied with facts and circumstances, affording no definite standard by which such wrongs can be measured, and, from the necessity of the case, must be judged of, and appreciated, by the view that may be taken of them by impartial jurors. To the jury, therefore, as a favorite tribunal, is committed the exclusive task of examining these facts and circumstances, and valuing the injury, and awarding compensation in the shape of damages.   *   * And [it is] not till the result of the deliberation of the jury shocks the understanding, and leaves no doubt of their prejudice or passion, that courts find themselves compelled to interpose."

Meagher v. Driscoll, 99 Mass. 281, was an action for trespass to realty. The action now before us par-

takes of the nature of such an action.  In that case it was contended that as the action was for trespass on real estate the plaintiff could at all events only recover for the actual damages done to such real estate.  The court held: "The gist of the action is the breaking and entering of the plaintiff's close.  But the circumstances which accompany and give character to a trespass may always be shown either in aggravation or mitigation.  He who is guilty of a wilful trespass, or one characterized by gross carelessness and want of ordinary attention to the rights of another, is bound to make full compensation.  Under such circumstances, the natural injury to the feelings of the plaintiff may be taken into consideration in trespasses to real estate as well as in other actions of tort.  Acts of gross carelessness, as well as those of wilful mischief, often inflict a serious wound upon the feelings, when the injury done to property is comparatively trifling.  We know of no rule of law which requires the mental suffering of the plaintiff, or the misconduct of the defendant, to be disregarded.  The damages in such cases are enhanced, not because vindictive or exemplary damages are allowable, but because the actual injury is made greater by wantonness."

The case at bar is an action of debt and not a tort action.  But, in this particular suit, that makes no difference in respect to the measure of damages or kind of damages allowable, for parties may contract for the payment of damages by any lawful measure and of any lawful character, in the event of a breach of the contract by the contracting party.  In 1 Sedgwick on Damages (8th Ed.), sec. 45, this subject of contracting to recover compensation for mental anguish is discussed.  We find there the following language, with reference to the doctrine of recovering damages for mental anguish under a contract, quoted from a decision: "The cases rest upon the reasonable doctrine that where a person contracts, upon a sufficient consideration, to do a particular thing, the failure to do

which may result in anguish and distress of mind on the part of the other contracting party, he is presumed to have contracted with reference to the payment of damages of that character in the event such damages accrue by reason of a breach of the contract on his part." True, the appellant company is but a surety upon the bond of the constable who committed the wrong and injury; but a surety is not so favored in the courts that the plain and natural intent and purpose of his or its contracts is construed into nothing.

The condition of the bond here involved, which is an official bond, is, in substance, that if Schwartz should fail in faithfully discharging the duties of his office, then a liability would arise. The statute that requires these bonds to be given expressly states that they are given for the benefit of all suitors and others who may be injured or aggrieved by the official acts or misconduct of the constable. As a general proposition a public official is not liable to a particular individual for any wrongful act of omission or commission in connection with his public duty unless the act involves, also, an individual wrong to such extent that the particular individual suffers a special and peculiar injury other and different from any suffered by the general public. Gage v. Springer, 211 Ill. 200. The office of constable is a public office and a constable is a public officer. Here, while such officer and under color of his office, Schwartz misconducted himself and acted unlawfully. In his obligations and duty as a faithful public officer he failed, in connection with the particular writ entrusted to him, here involved. That he is under legal obligation to make good the loss or damage sustained no one will deny. Such misconduct and unlawful action was, also, in breach of his official bond. Mrs. Hill suffered injuries, special and peculiar to her, and the statute expressly provides that those not suitors, as she was not, who may be injured or aggrieved by the "misconduct" of a constable shall be entitled to the benefit of his official bond. Knowing the law to be such,

the appellant company executed this bond. We see no difficulty in finding appellant liable for the misconduct and unlawful acts of the constable, Schwartz, committed under color of his office. The liability embraces compensatory, but not punitive, damages for the injuries Mrs. Hill sustained.

The rule which affords the measure of damages is to be supplied by the presiding judge, the amount of the damages is a question for the jury and, unless the damages are so excessive as to lead to a conclusion of passion or prejudice, neither the presiding judge nor an appellate tribunal can rightfully interfere with their verdict in respect to amount. Here the learned trial judge instructed the jury correctly as to the measure of damages. For an invasion of private rights by a public official, under the circumstances here shown, a jury can best determine the amount that will compensate one who has been both "injured" and "aggrieved" by the official misconduct of the constable. We see no reason for interfering, on account of the amount of the judgment.

There is ample evidence of the issuance of a valid execution. The copy of the execution given Mrs. Hill was given under the Exemption Act, chap. 52, sec. 14, Revised Statutes, and was given as an official act. The copy so given was primary and original evidence of compliance with the statute, by the constable. Such his official act and the copy are in evidence for all purposes, and the contents of the original execution is thus proven. The evidence in the record as to the identity of Schwartz we regard as sufficient.

Finding no error in the proceedings of the trial court, the judgment will be affirmed.

*Affirmed.*

Mr. Justice MACK took no part in the consideration of this case.