(No. 32358.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* IRWIN LOITZ *et al.*, Appellees.

*Opinion filed May 22, 1952.*

JOHN IRVING PEARCE, State's Attorney, of Joliet, for appellant.

ZIMMERMAN & NORMAN, of Chicago, (HAROLD W. NORMAN, and ALLYN J. FRANKE, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is a *quo warranto* proceeding, commenced in the circuit court of Will County, challenging the legal existence of Community Unit School District No. 207-U of that county, and calling upon appellees to show by what warrant they hold and exercise the power of members of the board of education of such school district.

An answer was filed in justification of the legal existence of the district, and upon the pleadings and stipulations made the trial court found that the school district was duly organized under the School Survey Act, that the act did not violate any provision of the constitution, that the validating acts validated the organization of the district, and entered an order in favor of the defendants. No testimony was taken in the case. A franchise and the constitutionality of a statute being involved, the appeal came direct to this court.

The answer filed admitted that the territory in question is composed of the townships and parts of townships designated in the complaint, and that this territory formerly lay in the elementary school districts designated in the complaint and in High School District No. 207 and Non-High School District No. 208. The answer admitted that since November 30, 1948, appellees have acted as the Board of Education of Community Unit School District No. 207-U and that they exercise the statutory powers, duties, functions and prerogatives of a board of education for the territory described in the complaint. They alleged that the district was legally organized and established under

the provisions of an act entitled "An Act in relation to the survey and reorganization of school districts and making an appropriation therefor," approved June 20, 1945, (Ill. Rev. Stat. 1951, chap. 122, pars. 713-729,) by an election called by the county superintendent of schools and held on October 30, 1948, pursuant to the recommendation and final report of the Will County school survey committee filed with him on May 31, 1948. The answer shows that all the steps required by statute were taken for the organization of a school survey committee and that, upon its organization, it followed the detailed procedure outlined in the statute for the organization of a district, and, as the result of its work, filed with the county superintendent of schools, on November 26, 1947, a tentative report recommending that a community unit school district be created, to consist of all the territory described in the complaint filed in this suit; that a copy of this report was furnished to each member of a school board in the county, and ten copies filed with the Superintendent of Public Instruction; that the county superintendent of schools gave the statutory notice of the filing of such tentative report, and that the same might be examined in his office, and fixed the times and places for public hearings thereon; that the hearings were held and conducted as required by law and that the final report of the school survey committee, with maps, was duly filed with the county superintendent of schools on May 31, 1948; that said report recommended that a community unit school district be created in the territory above mentioned, and a copy of such report was furnished to each school board member in the county and ten copies were filed with the Superintendent of Public Instruction.

The answer shows that upon proper notice an election was held in the territory on October 30, 1948, to vote upon the question of establishing a community unit school district therein; that the village of Peotone was located in

the described territory and had a population of more than 500 inhabitants; that a separate voting precinct for the election was established for the village of Peotone, and that the proposition to establish the district received a favorable vote both in the village of Peotone and in the territory outside of it; that the territory had an assessed valuation of $20,822,410 and a population of more than 2000; that the returns of the election were canvassed and on November 19, 1948, the county superintendent filed a certificate with the county clerk declaring that the territory had been organized into a community unit school district to which he had given the number 207-U, and with the certificate filed a map showing the boundaries of the district; that on November 27, 1948, an election was held therein, in accordance with the statute, for the purpose of selecting a board of education for the district; that the requirements of the law for the nomination of candidates were complied with and that the election was conducted in conformity with all applicable provisions of the School Code; that appellees each received a majority of the votes cast in that election, and that, when the election returns had been canvassed, the appellees, not more than two of whom were from any one congressional township, were declared duly elected members of the Board of Education of Community Unit School District No. 207-U. The answer shows that the board organized and elected officers on November 30, 1948; that subsequent elections have been held to fill the places of those whose terms expired from time to time; and that appellees constitute the present board of education of the district.

The answer further shows that validating acts were passed by the legislature on August 10, 1948. One of these acts (Ill. Rev. Stat. 1951, chap. 122, pars. 730-731,) validated the organization of all school districts created in conformity with the School Survey Act where the question of establishing a district pursuant to recommendation

of the final report of the school survey committee had been submitted to the legal voters residing in the proposed district within nine months after the final report of the committee was filed with the county superintendent of schools. The other act (Ill. Rev. Stat. 1951, chap. 122, par. 732,) validated the organization of all school districts created in compliance with law except that the filing of a petition was dispensed with in reliance upon the provisions of the School Survey Act.

A stipulation was filed by the parties to the effect that the allegations of fact in the answer are true and that if David E. Lindstrom were called as a witness by appellees he would testify in accordance with his attached affidavit, and that the affidavit should stand as the testimony of Lindstrom with the same force and effect as though he had testified in the case.

The affidavit stated that Lindstrom is a professor of rural sociology in the College of Agriculture at the University of Illinois; that he has a wide experience in rural education and has participated actively in the study and solution of educational and sociological problems affecting rural life; that he acted as an advisor to many of the school survey committees created under the act approved June 20, 1945; that he is familiar with rural educational facilities and the problems involved in the reorganization of rural schools; and that in his opinion there is a substantial difference between rural and urban areas in the attendance pattern, the attendance age, and the vocational interests of the pupils. The witness pointed out these differences in considerable detail and also presented the view that small villages, in their educational needs and patterns, are substantially the same as their surrounding rural areas, whereas larger villages and cities have a strong tendency to establish a separate identity from the rural area surrounding them and to have educational needs and patterns more nearly similar to those of urban areas.

It is contended by appellant that the School Survey Act is unconstitutional because section 13 thereof creates an arbitrary classification of cities, villages and incorporated towns, by placing those of 500 or more population into one class and those of less than 500 population into a separate class, in violation of section 22 of article IV of the Illinois constitution. Appellant also contends that both sections 7 and 13 of the School Survey Act delegate legislative power to the school survey committee established thereunder and that they are therefore in conflict with article III of the Illinois constitution. It is contended that section 13 is invalid in providing that in an election held under the School Survey Act to vote upon the question of reorganizing, establishing or changing the boundaries of a school district, a separate voting precinct is to be established wholly within the corporate limits of each city, village or incorporated town therein having a population of 500 inhabitants or more, but that when the territory involved has no city, village or incorporated town with a population of as many as 500 inhabitants, then the voters of the entire territory may vote as a unit, and the election returns may be canvassed as a unit, and it is not necessary to set up separate voting precincts for any city or village within the territory which has less than 500 population; that this is class legislation and is therefore in violation of section 22 of article IV of the Illinois constitution.

Appellant relies principally upon *People ex rel. Kane v. Weis,* 275 Ill. 581, and *Kenyon v. Moore,* 287 Ill. 233. In the former, the statute provided that a school township containing a school district of more than 1000 inhabitants and less than 100,000 inhabitants might be organized into a high-school district. We held that this was an improper classification because the inhabitants of a township which contained such a school district as was described in the act were given the privilege of organizing into a high-school district, whereas an adjoining township having iden-

tically the same population would not be permitted to organize into a high-school district because it did not contain within its boundaries a school district having more than 1000 but less than 100,000 inhabitants. The School Survey Act makes no such discrimination. It does recognize a difference between urban and rural areas and provides for a separate vote in each. It must be recognized that there are many differences between rural and urban life—economical, social and vocational. These differences affect the types of school needed in each area and the co-operation between the school and the parent. The legislature has determined that small communities have similar interests to the rural areas surrounding them in so far as education is concerned. In determining what size cities and villages should be classified with rural areas in that respect, and which should be regarded as urban centers, the legislature was compelled to draw the line somewhere and it fixed the line at 500 population. This determination of the legislature is not so palpably arbitrary as to authorize a judicial review. (*Stewart* v. *Brady*, 300 Ill. 425.) It seems to be contended that the legislature has not made the same 500 population figure requirement for districts organized under the Community Unit District Act, (Ill. Rev. Stat. 1951, chap. 122, pars. 8-9 to 8-14,) and has made no rural-urban separate-vote requirements for organization of other school districts under other provisions of the School Code. This does not show that the classification in the School Survey Act is arbitrary. It is not necessary that the legislature extend regulation to all cases it might possibly reach. It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be the clearest. (*Stewart* v. *Brady*, 300 Ill. 425.) The School Survey Act utilized a single method for conducting elections and the organization of and changes in the boundaries of school districts pursuant to its terms. It operates universally and it is not

necessary that it conform to the exact procedures provided for in the School Code. The School Survey Act was designated to provide a means to expedite school reorganizations pursuant to the recommendations of the county survey committees. It dispenses with the traditional requirement of a petition of the voters, but it provides that the proposal must carry in both urban and rural areas, and this provision acts as a safeguard to offset the elimination of the petition. The legislation involved in this case was a part of the program designed to reduce the number of school districts in Illinois. Since the passage of the School Survey Act the number of school districts in this State has been materially reduced and it is proper that we should give consideration to the purpose of this legislation.

Section 7 of the School Survey Act is not vulnerable to the constitutional objection made by appellant. It does not vest the school survey committee with a discretion as to what the law should be. It authorized the committee to inquire, investigate and confer in public meetings with interested inhabitants and school authorities, but the committee is given no power to create a school district or to change boundaries. It may recommend, but its recommendations do not become effective until approved by the voters at an election. A recommendation is advisory only and is not an exercise of power.

In the recent case of *People ex rel. Shore* v. *Helmer,* 410 Ill. 420, it was contended that the election to form the school district in question was invalid because the county superintendent of schools had not given the required notice. Appellees in that case relied upon one of the validating acts involved in this case. (Ill. Rev. Stat. 1951, chap. 122, par. 733.) We sustained the validity of the validating act and held that it validated the proceedings and we affirmed the judgment of the trial court in dismissing the complaint in *quo warranto.*

In the view we take of this case, it is not necessary for us to consider what effect, if any, the validating acts referred to herein had upon the proceedings for the organization of the district in question here, because we are of the opinion that neither section 7 nor section 13 of the School Survey Act is susceptible to the constitutional objections advanced against them, and that both these sections of the School Survey Act are valid and constitutional.

The judgment of the circuit court of Will county finding that Community Unit School District No. 207-U is a legally organized school district under the laws of this State, that appellees are legally acting as the board of education of that district, and that they are not guilty of unlawful usurpation of the powers, duties, functions and prerogatives of the board of education of said district, is accordingly affirmed.

*Judgment affirmed.*